UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JASON BROWN,**

   Plaintiff,

v.                                                                    No. 4:24-cv-00729-P

**BNSF RAILWAY COMPANY,**

   Defendant.

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant BNSF Railway Company's (BNSF) Motion for Summary Judgment. ECF No. 21. Having considered the Motion, applicable law, and relevant docket filings, the Court will **GRANT** the Motion.

### BACKGROUND

This case arises out of the termination of a railway company's engineer. Plaintiff Jason Brown brought suit against BNSF claiming that, despite being approved for leave under the Family and Medical Leave Act (FMLA), BNSF terminated Brown for his FMLA usage to attend medical appointments.

Brown worked at BNSF for twenty-five years. In 2023, he worked in BNSF's Red River Division as a locomotive engineer. Engineers at BNSF are on call 24/7. BNSF calls the engineers to operate trains based on a rotating board. When an engineer at the top of the board is called in, the second name on the board goes to the top, and so on. In February 2023, Brown was granted a "last chance" managerial leniency waiver after facing discipline for his attendance.

Around this time, Brown was dealing with multiple health issues including high blood pressure and anxiety. Brown applied for FMLA in August 2022 and May 2023, but was rejected both times because he had not worked enough hours in the preceding twelve months to qualify for

FMLA. Brown re-applied in July 2023 with a certification from his physician, Dr. Debra Krieg, and this time BNSF approved Brown's application.

BNSF's approval was consistent with Dr. Krieg's certification. Dr. Krieg indicated that Brown's conditions required leave "3-4 times per month" and that the treatment required "1-2 day(s) per treatment." Dr. Krieg left the question blank on the certification regarding whether absences on Saturday and Sunday would be necessary. Based on Brown's application, and Dr. Krieg's certification, BNSF approved Brown for "3-4 absences per month with a duration of 1-2 days per absence for appointments without weekend use." BNSF mailed a letter containing these parameters, and Brown received the letter on July 19, 2023, although Brown never read the letter. BNSF also utilized Workforce Hub, an online platform for tracking, among other things, FMLA approval. Brown's Workforce Hub indicated that weekend layoffs were "unlikely."

On September 9, 2023, Brown laid off a Saturday morning using FMLA leave. He also laid off September 15–17, beginning on a Friday and ending Sunday evening. On October 12, 2023, BNSF sent Brown a letter regarding his FMLA usage. Brandon Maly, the Director of Administration over the Red River Division wrote that Brown's FMLA usage was "inconsistent with [his] current FMLA approval." The letter also noted that Brown's "medical provider did indicate [he] may need 4 absences per month, each with a duration of 2 days for appointments (no weekend use) for which you are approved." The letter further encouraged Brown to provide an updated certification form within fifteen business days if Brown's circumstances had changed. Brown never submitted new certification forms.

Nearly two months after receiving Maly's letter, Brown laid off using FMLA from Saturday, December 2, to Monday, December 4. In response, on February 7, 2024, BNSF sent Brown another letter indicating BNSF would conduct a disciplinary investigation concerning Brown's "alleged indifference to duty and failure to comply with written instructions related to [his] FMLA usage issued to [him] by Brandon Maly in a

2

Certified Letter dated October 12, 2023." BNSF conducted this investigation on March 28, 2024.

Following the investigation, Brown was terminated. BNSF considered both Brown's FMLA usage since July 2023 and his "last chance" leniency waiver in 2023 in issuing the termination. Brown was notified of his termination via letter on April 10, 2024.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

BNSF's Motion argues that, whether Brown's claim is characterized as an FMLA interference or FMLA retaliation claim, summary judgment is warranted in BNSF's favor. While it is unclear whether Brown's FMLA claim is one of interference or retaliation, the Court will address both types of claims.

3

## A. FMLA Interference

BNSF first argues it did not deny any FMLA benefits to Brown for which Brown was entitled. The FMLA allows employees to take up to twelve weeks of leave for medical conditions in any 12-month period. 29 U.S.C. § 2612(a)(1). Once approved for FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right." *Id.* § 2615(a)(1).

To make a *prima facie* case for FMLA interference, a plaintiff must show: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Tatum v. Southern Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)). In this case, the first four elements are uncontested. Thus, the only question is whether BNSF's limitations on Brown's FMLA usage, or his ultimate termination, deprived Brown of his FMLA rights. If a plaintiff establishes a *prima facie* case of interference, the burden shifts to defendant-employer to articulate a legitimate, nonretaliatory reason for the adverse employment action taken. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

An employer may require employees to adhere to the "usual and customary procedures for requesting FMLA leave." *Acker v. General Motors, LLC*, 853 F.3d 784, 789 (5th Cir. 2017). In *Acker*, a General Motors employee was approved for FMLA but following multiple failures to timely notify General Motors before taking leave, the employee was terminated. *Id.* at 787–88. Although the employee's leave was protected by the FMLA, he failed to follow the General Motors policy. *Id.* And "an employer generally does not violate the FMLA if it terminates an employee for failing to comply" with a company policy unless there are "unusual circumstances." *Id.* at 789 (citations omitted).

Employers may also take adverse employment actions against employees who misuse their FMLA. *See Burgdorf v. Union Pac. R.R. Co.*, No. 5:16-CV-1046-DAE, 2019 WL 2464485, at *11 (W.D. Tex. Feb. 26,

4

2019); *see also Acker,* 853 F.3d at 789 ("Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.") (citations omitted). Much like this case, in *Burgdorf*, a railroad company notified one of its conductors of a "pattern of using unscheduled FMLA leave in conjunction with rest days around weekends or holidays." 2019 WL2464485, at *11. The conductor argued that the railroad company's flagging of his "suspicious use" of FMLA interfered with the conductor's FMLA rights. *Id.* The conductor highlighted that his FMLA approval did *not* condition FMLA usage to weekdays and non-holidays. *Id.* Nonetheless, the court found that the railroad company "gave [the conductor] the opportunity to provide more information detailing his need for this pattern of FMLA usage," and the conductor failed to comply. *Id.* Accordingly, the court found "[in]sufficient evidence to overcome summary judgment on [the employee's] FMLA interference claim" regarding the conductor's FMLA usage on weekends and holidays. *Id.*

Brown's interference claim fails for similar reasons to those in *Acker* and *Burgdorf*. Here, while there is no claim that Brown failed to provide notice, BNSF provided instructions in Brown's FMLA approval that weekend use was not allowed, which he failed to follow. Thus, in both *Acker* and this case, the employee's failure to adhere to the proper usage of FMLA suggests there is no FMLA interference. Brown has failed to demonstrate unusual circumstances warranting his departure from the BNSF FMLA approval instructions.

Indeed, there is undisputed evidence Brown misused his FMLA. Brown's argument for interference is that BNSF "restrict[ed] his leave to weekdays and then terminat[ed] him for using FMLA on a weekend." ECF No. 25 at 10. But Brown presents no caselaw that suggests BNSF could not restrict his leave to weekdays.[1] And unlike *Burgdorf*, where

---

[1] In fact, there are examples of employers excluding or monitoring holidays, for example, under FMLA leave approval. *See Adams v. CSX Transportation, Inc.*, No. 2:18-CV-00319-RDP, 2020 WL 1285544 (N.D. Ala. Mar. 18, 2020) (FMLA policy that limits the number of holidays for FMLA leave); *Burgdorf*,

5

the employee's FMLA approval was not conditioned to certain days, Brown's FMLA approval explicitly disallowed weekend use based on Brown's application and Dr. Krieg's certification. Additionally, as in *Burgdorf*, BNSF provided Brown an opportunity to update his FMLA approval when Maly sent Brown the October 12, 2023 letter. Despite this opportunity, Brown elected not to update the parameters of his leave, and instead continued to take leave on weekends outside of his FMLA approval.

Brown makes three arguments regarding his failure to comply with the FMLA leave approval. *First*, that in order to attend his Monday doctor appointments, Brown needed to take weekends off, and his "FMLA leave was specifically approved for appointments." *Second*, that Brown provided adequate notice. And *third*, that Brown received conflicting information regarding weekend use because his Workspace Hub stated weekend use was "unlikely," not "expressly forbidden."

Each argument is illogical. As for the first, the Court has already established that employers may temporally condition FMLA usage. BNSF did not deny Brown FMLA approval—it conditioned the approval to weekdays. And if all that was needed to establish a claim for FMLA interference is to show any approval whatsoever—regardless of the limitations—then employer's conditions would become meaningless. For the second, the question of notice is irrelevant; BNSF does not dispute that Brown gave notice, BNSF argues Brown's leave constituted improper usage. And for the third, Brown stretches the term "unlikely" to suggest Brown somehow thought leave was permitted, contrary to his FMLA approval. But "unlikely" does not mean "approved." And more importantly, there is no evidence the Workforce Hub information overrides what is in the FMLA approval letter—which stated "without weekend use."

Despite Plaintiff's various contentions, termination for FMLA usage and termination for failure to follow FMLA procedures are distinct. It follows that an employer's reference to FMLA leave in a termination

---

2019 WL 2464485, at *11 (monitoring an employee's use of FMLA leave on weekends and holidays).

letter does not necessarily constitute FMLA interference or retaliation. *See, e.g.*, *Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F.App'x 421, 427 (5th Cir. 2018) (rejecting plaintiff's argument that a termination notice that included approved-FMLA leave constituted direct evidence of a violation). BNSF did not violate any benefits Brown was entitled to solely because—in addition to misusing his FMLA—Brown also properly used some FMLA leave. BNSF is entitled to summary judgment on Brown's FMLA interference claim.

### B. FMLA Retaliation

BNSF challenges the existence of a causal connection needed to establish a *prima facie* case for retaliation. Even if Brown can show a causal connection, BNSF argues there is a legitimate, non-retaliatory reason for Brown's termination.

The FMLA prohibits employers from discharging or retaliating against an individual that opposes the employer's unlawful FMLA practices. 29 U.S.C. § 2615(a)(2). To make a prima facie case for FMLA retaliation, a plaintiff must show: "(1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (citation omitted). For the third element, the plaintiff must show "there is a causal link" between the FMLA-protected activity and the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

The standard for causation on FMLA retaliation claims is unsettled in the Fifth Circuit. *See Way v. City of Missouri City*, 133 F.4th 509, 525 n.26 (5th Cir. 2025) (using the but-for standard but acknowledging other courts that use "the more plaintiff-friendly 'mixed-motive'" standard). On one hand, the traditional *McDonnell-Douglas* framework applies a but-for standard. *See Wheat v. Fla. Parish Juv. Just. Com'n*, 811 F.3d 702, 710 (5th Cir. 2016). One common way to satisfy the *McDonnell-Douglas* standard is the temporal proximity test. *See Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 528 (5th Cir. 2021). The temporal proximity

7

of the adverse employment action and the FMLA-protected activity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). On the other hand, the mixed-motive framework only requires that discrimination be one reason for termination. *See Richardson*, 434 F.3d at 333; *Mead v. Lattimore Materials Co.*, No. 3:16-CV-0791-L, 2018 WL 807032, at *5 (N.D. Tex. Feb. 9, 2018) (requiring only that the employee demonstrate "the protected activity and the adverse employment action are not completely unrelated").

Brown cannot prove causation under any standard to establish a *prima facie* case. Brown makes no argument that his protected use of FMLA was the but-for cause of his termination. He likewise fails to provide evidence for a temporal proximity argument. Even if he did, Brown laid off using FMLA leave on weekend days in September 2023, October 2023, and December 2023. He received notices of his improper use of FMLA during that time and was terminated in April 2024. There is a four-month gap between the latest improper use of FMLA, in December 2023, and his termination in April 2024, which is not close enough to show causation under the temporal proximity test. *See Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir. 2020) (finding that a two and one-half month gap between a protected activity and an adverse employment decision was not "very close"). And as for the mixed-motive framework, Brown has no evidence to show his termination was caused by anything other than his failure to comply with the instruction in the FMLA approval letter. *See Acker*, 853 F.3d at 791 ("[Plaintiff] has not shown how his disciplinary leave was caused by his attempts to seek protection under the FMLA instead of his failure to follow GM's attendance and absence approval process."). For these reasons, summary judgment is also warranted on any FMLA retaliation claim made by Brown.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** BNSF's Motion and **ENTERS** summary judgment in BNSF's favor on all counts.

**SO ORDERED** on this **25th day of June 2025.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE